Julian O. Finsel, Carmelita A. Finsel, Sammy F. Gullone and Margaret Gullone, Appellants, *v.* Commonwealth of Pennsylvania—Department of Highways, now the Pennsylvania Department of Transportation, Appellee.

Argued October 8, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and BLATT. Judges KRAMER and WILKINSON, JR., did not participate.

*George W. Westervelt, Jr.,* with him *Cohen, Royle and Ticktin,* for appellants.

*Patrick J. Lavelle,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, December 31, 1975:

This is an appeal from an order of the Court of Common Pleas of Carbon County sustaining the preliminary objections of the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) to a petition for the appointment of viewers filed by the appellants pursuant to Section 502 of the Eminent Domain Code.[1]

---

1. Act of June 22, 1964, Special Sess. P. L. 84, *as amended,* 26 P. S. §1-502.

On March 18, 1969, appellants Julian O. Finsel and Carmelita A. Finsel sold a strip of land approximately thirty feet wide and six hundred feet long to PennDOT so that an existing highway might be widened and upgraded. The Finsels received $12,187.55 for the sale and executed a deed of easement to PennDOT, the last paragraph of which purported to release PennDOT from any further claims under the Eminent Domain Code. Thereafter, in August of 1969, the Finsels conveyed the remaining interest in their property of approximately fifteen acres to appellants Sammy F. Gullone and Margaret Gullone, and the highway improvements were completed in 1970. Since that time large quantities of surface water have run off the road through culverts onto and flooding approximately three acres of the land and washing out two dams holding recreational pond water. Because of this flooding, the appellants petitioned the court below for the appointment of viewers to assess consequential damages against PennDOT in accordance with Section 612 of the Eminent Domain Code, 26 P. S. §1-612. PennDOT filed preliminary objections to the petition asserting that the release constituted a bar to the recovery of any such damages. The preliminary objections were sustained, the petition was dismissed and this appeal followed.

The release executed by the Finsels at the time of the conveyance to PennDOT provided as follows:

"The GRANTOR does further remise, release, quitclaim and forever discharge the COMMON-WEALTH or any agency or political subdivision thereof or its or their employees or representatives of and from all suits, damages, claims and demands which the GRANTOR might otherwise have been entitled to assert under the provisions of the Eminent Domain Code, Act No. 6, 1964 Special Session, for or on account of any injury to or destruction of the lands of the GRANTOR through or by reason of the aforesaid construction or improvement."

The appellants characterize this provision as a "non-specific release" which does not discharge PennDOT for specific damages resulting from surface water runoff.

Releases, of course, must be construed strictly "so as to avoid the ever present possibility that the releasor may be overreached." *Restifo v. McDonald,* 426 Pa. 5, 9, 230 A.2d 199, 201 (1967). The release here clearly specifies that the Commonwealth (PennDOT) shall be released from *all* claims under the Eminent Domain Code for damages to "the lands of the Grantor," and the appellants argue that "the lands of the grantor" refers only to the grantor's remaining interest in the deeded land. It seems to us, however, that a release from damages to the non-deeded land of the grantor abutting the deeded land was within the contemplation of the parties when the release was given. And although we may sympathize with the appellants' loss here, at the time they executed the release "[t]hey were confronted with the not unusual, difficult problem which confronts all who are contemplating accepting a settlement for the damages due to an eminent domain taking. They had to visualize, difficult as it might be, all the damages to which they might be entitled by virtue of the taking." *Seitz v. Commonwealth,* 6 Pa. Commonwealth Ct. 425, 428, 296 A.2d 280, 282 (1972). The appellants here had the misfortune of not fully anticipating all of the losses which would result from water runoff and the extent to which they might suffer such losses by virtue of the highway improvement. The appellants cite *Furtek v. West Deer Township,* 19 Pa. D.&C. 2d, 169 (1959) for the proposition that the recovery of damages not contemplated upon execution of a general release are not thereby barred by the release. Although that case may be similar to the instant case on its facts with respect to the types of highway construction which took place and the damages sustained by the property owner there involved, the release in that case lacked the specificity present here. The release here ex-

pressly discharges *all claims under the Eminent Domain Code* and such a release most certainly contemplates a release of all indirect and consequential damages which might result from the highway improvements, such as surface water runoff.

The appellants may have been mistaken as to the extent of coverage otherwise afforded by the Eminent Domain Code. There is, however, no allegation that Penn-DOT was also mistaken and the appellants' mistake, therefore, provides no basis for setting aside the release. *Cf. Lowry v. Commonwealth*, 2 Pa. Commonwealth Ct. 643, 280 A.2d 685 (1971). Moreover, the appellants do not allege that the release was executed under duress, or that there was fraud or deception by PennDOT which might also nullify the release. *See McClelland Appeal*, 430 Pa. 284, 242 A.2d 438 (1968). We believe, therefore, that the release here involved was valid and binds the appellants with regard to damages resulting from the highway improvement made by PennDOT pursuant to the deed of easement.

The appellants, however, raised an additional argument in answer to PennDOT's preliminary objections to their petition for the appointment of viewers. They assert that the taking made by PennDOT for the highway improvement went "beyond the scope of the Deed of Easement," and that the release, therefore, would not apply to the additional damages suffered as a result of any construction beyond the terms of the deed. The court below, however, before ruling upon PennDOT's preliminary objections, granted the appellants an opportunity by way of deposition, to show that damages suffered were not covered by the release in the deed. After viewing the evidence thus taken, the court below found that the appellants had failed to prove that PennDOT exceeded the scope of its rights under the easement.[2] We

---

2. Although the learned judge below may have included these findings in his opinion as mere dicta, we believe that they were

have also received the testimony so taken and find no abuse of discretion nor any capricious disregard of evidence which would discredit the findings of the court below.

We, therefore, affirm the order of the Court of Common Pleas of Carbon County.

___

essential findings inasmuch as the appellants might have been entitled to recovery had they carried their burden of proof.